Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
Sean E. Smith, SBN 288973
**The McMillan Law Firm, APC**
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Plaintiff,
Lycurgan, Inc.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYCURGAN, INC. d/b/a ARES ARMOR,<br>Plaintiff,<br>v.<br>B. TODD JONES, in his official capacity as Head of the San Diego Bureau of Alcohol, Tobacco, Firearms and Explosives; and DOES 1-10,<br>Defendants. | CASE NO. 14-CV-1679 JLS (BGS)<br><br>**REPLY DECLARATION OF DIMITRIOS KARRAS IN SUPPORT OF PLAINTIFF LYCURGAN, INC.'S MOTION FOR NEW TRIAL**<br><br>Judge: Hon. Janis L. Sammartino<br>Dept.: 4A<br>Date: March 6, 2015<br>Time: 1:30 P.M. |

## DECLARATION OF DIMITRIOS A. KARRAS

I, Dimitrios A. Karras, declare as follows:

1. I am the Chief Executive Officer of Lycurgan, Inc., a California corporation ("Lycurgan"), and if called before this court or any other court I could and would testify competently to the following from my own personal knowledge, except as to those matters I state on information and belief, and as to those matters I believe them to be true.

2. This declaration is made in support of Lycurgan's reply to the Government's opposition to Lycurgan's Motion for New Trial.

3. I have reviewed the declaration of Resident Agent in Charge Armando

Hernandez. For all the reasons that have previously been stated, including in the expert declaration of retired BATFE Special Agent Daniel O'Kelly, the EP80 unfinished polymer receivers are not "firearms." Agent Armando Hernandez knows better.

4. I met Agent Armando Hernandez for the first time a few days before the raid on March 15, 2014. At my invitation, on or about March 12, 2014, Armando Hernandez came with ATF agent "Jen," to the Lycurgan warehouse at 180 Roymar Road, Suite D, Oceanside CA 92058. During that visit, I showed Agent Hernandez and Agent "Jen" that all of the EP80 unfinished polymer receivers were being maintained in a secure, locked room, and under constant video surveillance. I offered him the only keys to the room, and live-stream access to the video surveillance, which he declined. During that interaction, we discussed Lycurgan's position regarding the classification of the EP80 unfinished polymer receivers as "firearms." Armando Hernadez claimed that the indexing marks on the polymer unfinished lower receivers made them "firearms." I disagreed with him. His response was to the effect that the EP80 unfinished polymer receivers were "firearms" because his agency – the BATFE – said so. Despite my willingness to speak with him, and my invitation to come and see how we were securing the EP80 unfinished polymer receivers during the pendency of the classification dispute, his overall demeanor was one of hostility and contempt towards me. I have never understood his overt expressions of contempt and hostility toward me. I have always tried to be civil, if not cordial, with him. Agent "Jen" has always been pleasant and professional.

5. I was present at the raid on March 15, 2014. I was at Lycurgan's warehouse location in Oceanside on Roymar Road where the 5,804 EP80 unfinished polymer receivers were stored in a locked room. I was with ATF Agent Gordon Geerdes and several other agents while they were in the process of searching the warehouse at Roymar. While they were conducting their efforts, I

waited outside of the warehouse with my attorney Sandy Meade. On a couple of occasions, I was allowed inside the warehouse to use the restroom. During those times, I watched briefly while the agents counted each EP80 unfinished polymer receiver. The count that they took appeared to be careful and deliberate. From what I saw, they were making an effort to carefully count what was being seized. Likewise, from my vantage point outside, I was able to look through the door and watch the agents counting each individual EP80 unfinished polymer receiver. The count went on for hours. I never saw Armando Hernandez counting any of the unfinished receivers. Thus, I dispute that Armando Hernandez has any personal knowledge to imply that his fellow agents were careless in their count. I believe that I may have seen Armando Hernandez at the Roymar location after the items were counted and loaded in the ATF vehicles and taken away.

6. I know that Armando Hernandez and ATF agent "Jen" were at the Lycurgan's retail location during the March 15, 2014 raid. That retail location at 206 and 208 North Freeman Street, Oceanside. I know this because I have watched the video recording from the date of the raid where Armando Hernandez broke into the retail store wearing "tactical" clothing, with a helmet securely strapped down to his chin, and brandishing what appears to be an M-4 machine gun. When they burst through the door in their "tactical" garb, the retail store had families shopping, including some small children. The Roymar location is several miles away from the retail store. The raid at the Roymar location was far less flamboyant. The agents at Roymar waited for me to open the door, they didn't point their firearms at anyone; there was little showmanship displayed. It was physically impossible for Armando Hernandez to be present for the count at Roymar because he was busy at the Oceanside retail location.

///
///
///

7. On December 23, 2014, I was present at the ATF location in Carlsbad, California when the ATF returned the EP80 unfinished polymer receivers. Armando Hernandez was present there as well. Once again Armando Hernandez was hostile and contemptuous towards me and my lawyer. The other agents were coolly detached, and professional. Once again, Armando Hernandez did not personally participate in the count.

8. The first two boxes were brought out, and appeared to be fine. Initially, I was in a hurry and agreed that the boxes could be loaded without having a count. My lawyer Scott McMillan and I disagreed over my accepting the boxes without a count. The third box was brought out, and because the box appeared to have been tampered with, my lawyer Scott McMillan insisted on a full count, which he did. The box that McMillan suspected had been tampered with, in fact had fewer individual EP80 unfinished polymer receivers than were reflected in the count that the ATF had made on March 15, 2014. Resulting from that first box being short, we ultimately counted all of the individual polymer unfinished lowers. The two boxes that had been brought out to the ATF's contracted van, were brought back in and the contents counted. Thus, contrary to Armando Hernandez's statement ". . . [t]here was no indication that the storage facility had been breached or that any of the original boxes containing the seized firearms had been opened" [Doc., 27-1], it was obvious to the participants of the count, myself included, that some of the boxes had been unsealed. Some of the boxes had double tape over the seams as well.

9. The EP80 unfinished polymer receivers did not simply disappear into thin-air. The ATF took Lycurgan's EP80 unfinished polymer receivers. I am informed and believe that 19 remain in their actual or constructive possession: one which was seized at the National City location, and 18 which were seized from Roymar and have yet to be returned.

///

10. It is troubling that while the ATF makes a comparison of the EP80 unfinished polymer receivers to "machine guns," Armando Hernandez refuses to account for the missing items which he has declared – under penalty of perjury – to be "firearms." Although I disagree with the ATF hyperbole and its characterization of the unfinished polymer receivers as firearms, I request that the ATF be required to account and return Lycurgan's property.

I declare under the penalty of perjury according to the laws of the United States, that the foregoing is true and correct and that this declaration was signed on February 16, 2015, in the County of San Diego, California.

Dimitrios A. Karras