# EXHIBIT B

Before the U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

# VERIFIED CLAIM

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>That personal property seized from Lycurgan, Inc., and identified by the BATFE as "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL:Unknown SN:None" | ATF Case Number: 784090-13-0011-01<br>Asset ID: 14-ATF-009592<br>Asset Value: $290,200.00<br>Seizure Date: 03/15/2014<br>Seizure Place: Oceanside, CA<br>Judicial District: Southern District of California<br>Notice of Mailing Date: March 27,2014<br>Notice mailed to:<br>Dimitrios Karras<br>208 N Freeman St<br>Oceanside, CA 92054-2819 |

TO: Forfeiture Counsel, Asset Forfeiture and Seized Property Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, 99 New York Avenue, NE, Mail Stop 3N600, Washington, DC 20226.

FROM: Scott A. McMillan, The McMillan Law Firm, APC, 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230, phone (619) 464-1500 x 14, email: scott@mcmillanlaw.us, Attorneys for Lycurgan, Inc., a California corporation, claimant.

Please take notice that Lycurgan, Inc., a California corporation, doing business as Ares Armor, **hereby contests the forfeiture of the above designated property and requests the initiation of a judicial proceeding to challenge such forfeiture**. Such identification of the property seized set forth in this claim is made without prejudice to challenging the incorrectly characterized property description. Specifically, the items taken from the premises located at 180 Roymar Road, Suite D, Oceanside, California were not "AR Type Receiver/Frame". The items were not "receivers" or "frames" as such words are defined in the Gun Control Act of 1968, or prior interpretative determinations of the BATFE under such Act.

Please also take notice that Lycurgan, Inc., a California corporation, doing business as Ares Armor, in addition to filing this claim, reserves the right to file a separate or supplemental petition requesting the remission (pardon) or mitigation of the forfeiture with ATF Forfeiture Counsel. Please also take notice that in addition to filing this claim, Lycurgan Inc., reserves the right to file a separate or supplemental request for return of the property.

Please also take notice of the attached correspondence between attorney Jason Davis and Earl Griffith, Chief, Firearms Technology Branch, BATFE, included as Exhibits "A," "B," and "C." I respectfully direct counsel to Exhibit B, the letter dated February 7, 2014, from Mr. Griffith, which states:

> "In interpreting the GCA and implementing regulations as applied to AR-type firearms, ATF has long held that any machining of the fire-control cavity is the legally significant step in making a receiver."

[Letter, Earl Griffith, Exh. B]

Mr. Griffith's letter recognizes that castings that lack machining of the fire control cavity would not be considered a frame or a receiver under the Gun Control Act of 1968. **The seized castings lack any machining to the fire-control cavity.** The BATFE's incorrect classification of these castings arises from a misapprehension of the manufacturing process of the castings. That misapprehension was identified and addressed by attorney Jason Davis in his letter of March 4, 2014 to Mr. Griffith.

Please take notice that the below declaration Dimitrios Karras is submitted in satisfaction of the requirements of 28 C.F.R. 8.10, and in accordance with the above identified Notice of Seizure And Administrative Forfeiture Proceeding mailed on March 27, 2014.

Dated: April 5, 2014

Respectfully submitted,
The McMillan Law Firm, APC

Scott A. McMillan
California Bar Number 212506
Attorneys for Lycurgan, Inc.
Claimant

**DECLARATION OF DIMITRIOS KARRAS PURSUANT TO 28 U.S.C. § 1746**

I, Dimitrios Karras, declare as follows:

1. I am over the age of eighteen. If called before any court I would testify from my own personal knowledge to the following:

2. I am the Chief Executive Officer of Lycurgan, Inc., a California corporation. On March 15, 2014, agents purporting to be from the Bureau of Alcohol, Tobacco, Firearms and Explosives entered Lycurgan's leased real property and proceeded to search Lycurgan's premises.

3. During its search, the BATFE agents seized and carried away a number of polymer castings which the BATFE "NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING" mailed on March 27, 2014, incorrectly describes as "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL:Unknown SN:None." Such items *are* the property of Lycurgan, Inc., in fee simple absolute.

4. On behalf of Lycurgan, Inc., I am authorized to contest the forfeiture of such property and hereby do so. Lycurgan, Inc., requests initiation of judicial forfeiture, and demands trial by jury.

5. I request that the BATFE release all property taken from Lycurgan, whether or not identified in the inventories issued, and whether or not forfeiture of such property is intended.

I, Dimitrios Karras, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the foregoing is true and correct and that this was executed on April 5, 2014, at the City of La Mesa, County of San Diego, State of California.

Dimitrios Karras

CERTIFICATE OF SERVICE

I, Scott A. McMillan, declare:

On April 5, 2014, I placed the foregoing VERIFIED CLAIM in envelope, addressed as follows:

Forfeiture Counsel,
Asset Forfeiture and Seized Property Division,
Bureau of Alcohol, Tobacco, Firearms and Explosives,
99 New York Avenue, NE,
Mail Stop 3N600,
Washington, DC 20226

I then sealed such envelope. I affixed the requisite postage for Express Mail, Item EQ 942350642US, and deposited said envelope it the United States Mail.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was signed in accordance with 28 U.S.C. § 1746, at the City of La Mesa, County of San Diego, State of California, United States.

Scott A. McMillan

# Exhibit A




*The Law Offices of*

**DAVIS & ASSOCIATES**

27201 Puerta Real, Suite 300, Mission Viejo, CA 92691
Direct (949) 310-0817/Fax (949) 288-6894 Jason@CalGunLawyers.com
www.CalGunLawyers.com

July 20, 2013

Earl Griffith
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Firearms Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405 USA
**VIA FED-EX**

Re: **<u>In re: EP ARMS, LLC</u>**

Dear Mr. Griffith:

I write regarding my client, EP ARMS, LLC (EPA) and their intent to manufacture a partial lower receiver. Specifically, we are asking for clarification as to whether the incomplete AR-type lower that my client intends to manufacture is a "firearm" as defined in 18 U.S.C. §921(a)(3) or a merely a casting.

We have enclosed an exemplar EPA AR-15 type casting for your review and examination. The following features are included on the AR-15 casting:

- Magazine well;
- Magazine catch;
- Receiver extension/buffer tube;
- Pistol-grip area;
- Pistol-grip screw hole;
- Pistol-grip upper receiver tension hole;
- Pistol-grip tension screw hole;
- Bolt catch;
- Front pivot-pin takedown hole;
- Rear-pivot pin takedown hole.

We believe that these features molded into the raw casting do not render the casting a firearm for the reasons detailed below. But, in an abundance of caution, we request clarification from the Bureau of Alcohol, Tobacco, Firearms, and Explosives – Firearms Technology Branch.

## DEFINITION OF FIREARM

Title I of the Gun Control Act, 18 U.S.C. §§ 921 *et seq.*, primarily regulates conventional firearms (i.e., rifles, pistols, and shotguns). Title II of the Gun Control Act, also known as the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*, stringently regulates machine guns, short barreled shotguns, and other narrow classes of firearms. "Firearm" is defined in § 921(a)(3) as:

> (B) Any weapon (including a starter gun) which will or is designed to or may readily be converted expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

As noted, the term "firearm" means a "weapon . . . which will or is designed to or may readily be converted to expel a projectile," and also "the *frame or receiver* of any such weapon." (18 U.S.C. §921(a)(3).) Both the "designed" definition and the "may readily be converted" definition apply to a weapon that expels a projectile, not to a frame or receiver. A frame or receiver is not a "weapon," will not and is not designed to expel a projectile, and may not readily be converted to expel a projectile.

The issue therefore becomes whether the raw material "casting," with the specified features, may constitute a "frame or receiver."

ATF's regulatory definition, 27 C.F.R. §478.11, provides: "*Firearm frame or receiver*. That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel. (The same definition appears in 27 C.F.R. §479.11.) "Breechblock" is defined as the locking and cartridge head supporting mechanism of a firearm that does not operate in line with the axis of the bore." (*Glossary of the Association of Firearms and Toolmark Examiners* (2nd Ed. 1985, 21).)

Assuming that a lower receiver is deemed a "frame or receiver" for licensing purposes, the statute refers to "the frame or receiver of any such weapon," not raw material which would require further milling, drilling, and other fabrication to be usable as a frame or receiver. Referring to ATF's definition in §478.11, an unfinished piece of metal is not a "part" that "provides housing" (in the present tense) for the hammer, bolt, or breechblock, and other components of the firing mechanism, unless and until it is machined to accept these components. The definition does not include raw materials that "would provide housing" for such components ". . . if further machined." Nor may it be said that such piece of metal "is . . . threaded at its forward portion" so that a barrel may be installed.

In ordinary nomenclature, the frame or receiver is a finished part which is capable of being assembled with other parts to put together a firearm." (*Receiver*. The basic unit of a firearm which houses the firing and breech mechanism and to which the barrel and stock are assembled. *Glossary of the Association of Firearm and Toolmark Examiners* (2nd ed. 1985), 111.) Raw material requires further fabrication. The Gun Control Act recognizes the distinction between "Assembly and "fabrication." (Compare 18 U.S.C. §921(a)(29) (defining "handgun" in part as "any combination of parts from which a firearm described in subparagraph (A) can be *assembled*") with §921(a)(24) (referring to "any combination of parts, designed or redesigned, and intended for use in *assembling or fabricating* a firearm silencer or firearm muffler" (emphasis added.).) The term "assemble" means "to fit or join together (the parts of something, such as a machine): to assemble the parts of a kit." (Assemble. *Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition*. HarperCollins Publishers. http://dictionary.reference.com/browse/assemble (accessed: January 23, 2013).) The term "fabricate" is broader, as it also synonymous with manufacture: "to make, build, or construct." (Fabricate. *Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition.* HarperCollins Publishers. http://dictionary.reference.com/ browse/fabricate (accessed: January 23, 2013).) Thus, drilling, milling, and other machining would constitute fabrication, but assembly more narrowly means putting together parts already fabricated.

Moreover, "Congress did not distinguish between *receivers integrated into an operable weapon and receivers sitting in a box, awaiting installation*." (*F.J. Vollmer Co., Inc. v. Higgins*, 23 F.3d 448, 450 (D.C. Cir. 1994)(Emphasis added.) The absence of a single hole and the presence of a piece of extra metal may mean that an item is not a frame or receiver." (*Id.* at 452 ("In the case of the modified HK receiver, the critical features were the lack of the attachment block and the presence of a hole"; "welding the attachment block back onto the magazine and filling the hole it had drilled" removed the item from being a machinegun receiver.).)

## ANALOGOUS DETERMINATIONS

In an analogous situation, ATF has defined a receiver in terms of whether it was "capable of accepting all parts" necessary for firing. Like the term "firearm," the term "machinegun" is also defined to include the "frame or receiver of any such weapon." (26 U.S.C. §5845(b). The same definition is incorporated by reference in 18 U.S.C. §921(a)(3).) The Chief of the ATF Firearms Technology Branch wrote in 1978 concerning a semiautomatic receiver which was milled out to accept a full automatic sear, but the automatic sear hole was not drilled. He opined: "in such a condition, the receiver is not capable of accepting all parts normally necessary for full automatic fire. Therefore, such a receiver is not a machinegun. . . . As soon as the receiver is capable of accepting all parts necessary for full automatic fire, it would be subject to all the provisions of the NFA." (Nick Voinovich, Chief, ATF Firearms Technology Branch, Feb. 13, 1978, T:T:F:CHB, 7540. Similar opinions were rendered by the Chief, ATF Firearms Technology

Branch, Aug. 3 1977 (reference number deleted); and C. Michael Hoffman, Assistant Director (Technical and Scientific Services), May 5, 1978, T:T:F:CHB, 1549?).)

That being said, the ATF has taken differing opinions as to what extent raw material must be machined in order to be deemed a firearm.

In a 2002 determination, ATF stated the following about an unfinished lower receiver for an AR 15 that "by performing minor work with hand tools, this receiver can be assembled into a complete rifle." (Curtis H.A. Bartlett, Chief, Firearms Technology Branch, Oct. 22, 2002, 903050:RV.) The letter continues:

> The minor work includes:
> 1. Drilling the holes for the takedown/assembly pins;
> 2. Drilling the holes for the trigger and hammer pins;
> 3. Drilling the holes for the magazine catch; and
> 4. Drill and tap the holes for the pistol grip screw.
>
> Our evaluation reveals that the submitted receiver can be readily converted to expel a projectile by the action of an explosive," and is, therefore, a firearm . . . .

The above assumes that the "can be readily converted" clause refers to a frame or receiver, when actually that clause refers to a *weapon* that can be so converted. A frame or receiver cannot, by itself, be converted to a weapon that expels a projectile. That would require the presence of all the other firearm parts, and even then the above machine work would be required, together with assembly.

By contrast, and more recently, ATF determined the following "unfinished AR15 lower" not to be sufficiently machined to constitute a frame or receiver:

> The FTB examination of your submission confirmed that machining operations have been performed for the following:
>
> - Magazine well;
> - Magazine catch;
> - Receiver extension / buffer tube;
> - Pistol grip;
> - Bolt catch;
> - Trigger guard;
> - Pivot pin and take down holes (drilled).

> The FTB examination found that this item, in its current condition, has not reached a point in manufacturing to be classified as a "firearm" per the GCA definition, Section 921(a)(3).

(John R. Spencer, Chief, Firearms Technology Branch, November 19, 2012, 903050:MRC 3311/2012-1034.) (See also: 903050:AG 3311/2011-703; 903050:KB 3311/300863; 903050:KB3311/300862)

It is important to note that each side of the submitted casting includes three extrusions. As you are aware, these extrusions do not exist on completed AR-15 type lowers. They have been added to the component and must be removed prior to installation of any parts or components. While these extrusions do contain slight depressions, these depressions are not of sufficient depth to cross the plane of the either side of the completely machined lower receiver.

It is clear that the EPA casting does not provide housing for the "hammer, bolt or breechblock, and firing mechanism." In this regard, the operations performed on the exemplar casting are more akin to the later examination than the former. As such, it is our belief that the exemplar casting does not constitute a "receiver" or a "firearm." But, again, we request your clarification on this point.

Thank you for taking the time to address this issue. We look forward to hearing from you. Please let us know if you have any further questions or concerns.

Sincerely,

**DAVIS & ASSOCIATES**

s/ *Jason Davis*

JASON DAVIS

# Exhibit B



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg, WV 25405*

www.atf.gov

903050:MRC
3311/301179

February 7, 2014

Mr. Jason Davis
Davis & Associates
27201 Puerta Real
Suite 300
Mission Viejo, CA 92691

Dear Mr. Davis,

This is in reference to your correspondence, along with an AR-15 type "incomplete lower," to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). You have submitted this casting on behalf of your client, EP Arms, for classification under the Gun Control Act of 1968 (GCA).

As you are aware, the GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as follows: ...*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.* Further, GCA implementing regulations, 27 CFR § 478.11 define "firearm frame or receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."

The FTB examination of this casting confirmed that it has the following features and characteristics:

1. Magazine well.
2. Magazine catch.
3. Bolt catch.
4. Pistol grip.
5. Forming and tapping for receiver-extension/buffer tube.
6. Front pivot-pin hole.

7. Rear take-down hole.
8. Holes drilled for the detent take-down and pivot pin, retainer buffer, detent fire-control selector, and pistol-grip screw.

Further examination by FTB revealed that excess material extends past the exterior walls of the casting, indicating the approximate locations of the holes to be drilled for the selector, hammer, and trigger pins. We further noted that the fire-control cavity has been formed and then, at a later time, filled in with plastic material.

It is our determination that when the fire-control cavity was formed during the manufacturing process, the submitted casting reached a point in its manufacture to be classified as a "firearm" as defined in 18 U.S.C. 921(a)(3).

You argue that to be classified as a "firearm frame or receiver," the GCA and implementing regulations require that the item be completed so that all fire control components may presently be installed in the frame or receiver. In interpreting the GCA and implementing regulations as applied to AR-type firearms, ATF has long held that any machining of the fire-control cavity is the legally significant step in making a receiver.

Further, the filling of the cavity at a later point does not change our classification. Although the fire-control cavity was filled with plastic material that must be removed before fire control components may be installed, ATF has long held that this is not sufficient to destroy the receiver and remove the item from classification as a "frame or receiver." For your reference we have included the destruction diagram for AR-type firearms.

Finally, although the definition of "machinegun" includes "frame or receiver," determination of what constitutes a machinegun receiver often requires a different analysis than determining whether something is a firearm under the GCA. In some cases, machineguns are made from semiautomatic firearms with extra components, and it is the modification of a receiver to accept these extra components that creates the machinegun receiver. Although FTB has determined that a semiautomatic receiver was not made into a machinegun receiver "until the receiver is capable of accepting all parts necessary for full automatic fire," that reasoning doesn't apply to making a determination of whether the item is a firearm under the GCA. This is because classifying a semiautomatic receiver as a machinegun simply because it may be machined to accept machinegun parts would regulate all such firearms as "machineguns." Therefore ATF's classifications of machinegun receivers is not premised on the fact that the receiver must be capable of housing all parts necessary for automatic fire, but that a semiautomatic copy of a machinegun becomes a machinegun only when this occurs. *See Sendra Corp. v. Magaw*, 111 F.3d 162, 163 (D.C. Cir. 1997).

In closing, we caution that the information found in this correspondence with regard to the evaluation described above is intended only for use by the addressed recipient(s).

Please provide our Branch with a FedEx account number or a UPS shipping label addressed to yourself so that we may return your sample. Please be advised that we do

not ship via the U.S. Postal Service. If you don't need to have us return your sample, you may fax FTB at 304-616-4301 with authorization to destroy it on your behalf.

We thank you for your inquiry and sample, regret that our findings could not be more positive, but trust the foregoing has been responsive to your request. If you require further information concerning our findings, we can be contacted at any time.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch

# Exhibit C




*The Law Offices of*
**DAVIS & ASSOCIATES**

27201 Puerta Real, Suite 300, Mission Viejo, CA 92691
Direct (949) 310-0817/Fax (949) 288-6894 Jason@CalGunLawyers.com
www.CalGunLawyers.com

March 4, 2014

Earl Griffith
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Firearms Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405 USA
**VIA FED-EX**

Re: **In re: EP ARMS, LLC**

Dear Mr. Griffith:

I write regarding my client, EP ARMS, LLC (EPA). Specifically, we write to request reconsideration of your conclusion that the product sample submitted is a "firearm" in the response to your letter dated, February 7, 2014, which was based on a fundamental misunderstanding of the manufacturing process. (Enclosed.)

Specifically, your letter was a response to our letter dated July 30, 2013 (enclosed), which requested clarification as to whether a product submitted is a firearm. In your letter you stated that:

> It is our determination that when the *fire-control cavity was formed during the manufacturing process*, the submitting casting reached a point in its manufacturer to be classified as a "firearm" as a defined in 18 U.S.C. 921(a)(3).
>
> ***
>
> Further, the filling of the cavity at a later point does not change our classification. *Although the fire-control cavity was filled with plastic material that must be removed before fire control components may be installed*, ATF has long held that this is not sufficient to destroy the receiver and remove the item from classification as a "frame or receiver." . . .

(Emphasis added.)

As stated above, this response is based on a fundamental misunderstanding of the process by which the submitted sample is manufactured. Specifically, the letter is based on the assumption

that the receiver is formed, and then it is filled with additional plastic. This is inaccurate. **At no time is a fire-control cavity formed during the manufacturing process, nor is the fire-control cavity "filled" with plastic material. In fact, at no time does a fire-control cavity exist in the manufacturing process.**

The actual process of manufacturing the sample is the converse of your assumed method, and takes place in two stages:

**Stage 1:**
The manufacturing process starts with the production of a core, dubbed a "biscuit." (Enclosed with this letter are two sample core "biscuits" for your examination and evaluation.) It is made of a material close to Nylon 66 and is the first part of the manufacturing process. Once the biscuit is manufactured it has a 2 day curing process before proceeding to Stage 2.

**Stage 2:**
After the curing has taken place with the biscuit it is placed inside the cavity of a secondary mold. The secondary mold bonds additional material to the biscuit and creates the overall shape of the product by means of mold injection. (The previously submitted sample still in your possession represents the result of Stage 2 production). Thus, at no time does a fire-control cavity exist.

We believe that these features molded into the raw casting do not render the casting a firearm for the reasons detailed below. But, in an abundance of caution, we request clarification from the Bureau of Alcohol, Tobacco, Firearms, and Explosives – Firearms Technology Branch.
It is clear that the EPA casting does not provide housing for the "hammer, bolt or breechblock, and firing mechanism." In this regard, the operations performed on the exemplar casting are more akin to the later examination than the former. As such, it is our belief that the exemplar casting does not constitute a "receiver" or a "firearm." But, again, we request your clarification on this point.

Thank you for taking the time to address this issue. We look forward to hearing from you. Please let us know if you have any further questions or concerns. **When complete, please return the submitted parts via Fed-Ex using account number: 321690653.**

Sincerely,

**DAVIS & ASSOCIATES**

s/ *Jason Davis*

JASON DAVIS